Good morning. I'm Gennady Lebedev representing the appellants. I'm sorry, I can't hear you. I'm Gennady Lebedev representing the appellants. I believe that the briefs that were submitted, the opening brief and the reply brief, pretty well address the issue. It's a very narrow issue. I have a question. Yes. It looks to me as though the way we ought to decide under state law, assuming that's what we use, whether there's res judicata, is to see whether the same primary right was at stake in the different lawsuits. And it looks to me as though the primary right was not a contract right on the contracts with the seller of the gasoline because there are many breach of contract alleged. The primary right appears to be the right to be free of predatory and discriminatory pricing. That right is common to all of these franchise gas stations. So that would cut in favor of res judicata. What am I misunderstanding there? It's a statutory right arising out of California state statutes pertaining to price discrimination. So it's not a contract right. It's a price discrimination right. Right. However, the statutory right only arises if there's a contractual relationship with the parties. In other words, the plaintiff was a franchisee of Shell Oil or Equilon, and he had different franchise agreements for each station. Were the differences in the agreements material to the claims in the dispute? The only difference in the agreements was that it was a price discrimination issue relating to one area where the station was located as opposed to another area where the station is located. Could you clarify something just along those very lines right there? I gather under the franchise agreement, let's take the station out in the valley. Was there a territory sort of like identified in the franchise agreement? No. That's the issue in the case. The law says that the franchisor may not discriminate in price, may not charge different prices for different purchases of gasoline, who compete for the same group of customers. That's what we're talking about here. So the issue in the case was what customers does this specific station compete for? And Shell internally has a marketing area that it considers to be the competitive area for this one station. This is confidential. Shell does not reveal what that marketing area is to the public or to the dealer. So if Shell has a marketing area here and a marketing area here and has two different stations in those two marketing areas, or they call them price zones, then Shell says that this station doesn't compete with this station, therefore we can charge them different prices. What the plaintiff in this case was alleging is that, for example, if you have these two separate price zones, that those price zones actually compete for the same group of customers. Therefore, Shell is discriminating in price by charging different prices in different price zones. So the issue in the case was, one of the main issues in the case was, is Shell's price zone that it has designated as a competitive marketing area, does it accurately reflect the competitive market? And the plaintiff in the case was saying, no, it doesn't, and that the actual market is bigger. And that right for him to be able to come out and say that and make that argument arises out of his contractual relationship with Shell, in which Shell has agreed to supply him gasoline. And the statute that we're talking about protects franchisees. So a prerequisite to get your foot in the door under the statute is you must be a franchisee. In other words, you must have a contractual relationship with the supplier. And that is why we're saying that the same primary right was not affected under California law. But it sounds like what you just described to me, it sounds like you were trying to vindicate this primary right in the greater area. Well, we were alleging that Shell is charging different prices to different dealers  And our ability to make that allegation arises out of our contractual relationship with Shell in that market that we were talking about. And so this particular dealer had more than one station, and we're only talking about two stations. And he, in this case, and in the prior case, it was a prior station. These stations are 30 miles apart, and there's no allegation that these stations compete with each other or should be in the same marketing area. But each station has its own contract, its own franchise agreement. So this is where the primary right comes out. Because in the California law, if you have a different contractual relationship, then the primary right arises out of each contract is considered a separate primary right. And so what I'm saying is that because the statutory right arises out of a contractual right, when you have two separate contractual rights, then you can't say that they're both arising out of the same primary right. Mr. Coyle, do you have any other questions about that? Because that's a very, I think, esoteric issue. I'm trying to think of, let's see, if there's a right, there has to be a correlative duty. Right. The right arising out of the contract is to be supplied with gasoline at the contract price. The duty is to supply it at the contract price. Well, it's not the contract price. There's no breach of that duty. I'd just like to correct the court that it's not the contract price. In other words, there is no price within the contract that says we're going to charge you this price for a gallon of gas. I imagine we have to go with the market. The price is the market price. It's the price that shifts. Every day. Every day. Exactly. But the duty is to, if you're going to follow California statute of the first law. There's a duty under the contract and a duty under the law, and that's what I'm trying to sort out. And I have not actually read the contract. The case is kind of voluminous. I'm not sure whether that matters. I didn't see anything in the briefs that suggested there would be material differences. There aren't material differences between the terms of the contract. The only material difference between the terms of the contract is the location of the station, because the statutory right arises if there's a contractual relationship going on. Let me ask one other thing. For this price discrimination claim, do you have to, like in any trust case, usually you have to define the market. Right. In a price discrimination claim under state law, do you have to define a market? Well, that's the issue. The 21-200 statute under California law is very similar to the Robinson-Patton statute in federal law. There are differences, and the 21-200 statute is a little bit, I think, easier to prove, because you don't have to show market power and so forth, because under the California statute it's presumed that there's already a market power, because we're talking about intra-brand competition, competition between stations of like brands from the same supplier. So that's what we're talking about is defining the market. I don't see how you could avoid a lot of business judgment there. I mean, I may buy some gasoline this week in the Pasadena area, but probably 98% of my purchases of gasoline or more are in Alaska. The Pasadena gas station might say we sell gasoline to customers from as far away as Alaska, but nearly all of their gasoline sales are to people probably within the Pasadena area. Now, if they're 50 cents a gallon less, they'd probably sell to Glendale and Alhambra and maybe even getting further over to the west. I don't know, but it seems like it would always be a matter of business judgment, and the market would change according to the price, and both the franchisee and shell would just adjust their policies according to whatever they thought would optimize. Well, that's the question that is up to experts to argue over, whether or not these stations compete to a material degree for the same set of customers. In your situation, if a person was living somewhere else and once in a while filled up at this station, that wouldn't be considered material to affect competition. Are there different numbers, like the station says 90% of our sales are to people within an area and shell says we count it as a market of 80% of the sales are to people in such and such an area? Well, those are all the issues that are currently in debate or in other cases at trial. These are factual questions as to whether or not a station competes for the same group of customers or whether shell is charging different prices to people who are actually competing with each other or to stations that are competing with each other. And that is what the California statute is designed to prevent, is that they don't want a franchisor charging different prices to customers or to retailers who are competing for the same customers. And whether or not they're competing for the same customers, that's a factual issue at trial ultimately. But going back to the question of the primary right, what I'm saying is that you have a primary right, first of all, which is a contractual right to be supplied with gasoline. Then you have a statute that governs, that regulates how the franchisor prices the product, the gasoline product. And in order to benefit, to receive a benefit or to sue under this statute or to enforce any rights under this statute, you have to first have that contractual right to be supplied with gasoline. And so it's an anti-competition statute. It's a statute that basically governs anti-competitive behavior. I guess my problem is there's already been a couple of lawsuits that the franchisees lost, and I do not see the material difference. Well, the one issue in this case was dismissed on a discovery sanction. So what? Exactly. Still a dismissal on the merits. Exactly. So the issue here is you have, in that case, the same dealer with another station, with another franchise agreement pertaining to that station, lost that case. We're not reasserting the claims under that agreement, under that station, under that marketing area in this case. Different marketing area. Different marketing area, different franchise agreement. But you're in privity with them, and it's the same claim, right? We were in privity with them under a different franchise agreement. You're in privity with them and with the plaintiffs here on the same theory. Same statutory claim, but different marketing area, so it's a different set of evidence regarding whether these stations compete with each other or whether they don't compete with each other. It would be completely different evidence. I mean, a lot of the evidence will be the same regarding Equan's practices, business practices, but the main evidence as to whether the market is the same, which is the markets are completely different, that evidence would be obviously different because you'd be talking about a different part of the city as compared to the other case. But the primary right issue that is explained under California law basically says that if you have different contracts, different rights arise under different contracts. And therefore, since the statutory right must first have a contractual right, the same applies here because you can't have the statutory right unless you also have a contractual right. They go hand in hand. I just have one minor little procedural question for you. Was anybody else dismissed other than your client? Yes, there were multiple plaintiffs in that case, and Deola is the only one. Is there anything left of the case, of this case in district court? The first case? No, the second case, the case we're dealing with here. At this point, no. But there are other districts. There's another district court case similar to this that's currently set for trial in May. Okay. But this case in the district court is? This Vandervoort case has been either, I think it's basically settled. Nobody was dismissed, but all the plaintiffs settled. All right. Thank you. Thank you, counsel. Thank you, Your Honor. Even though we ran over your time, we may call on you for 30 seconds of rebuttal. Thank you. Good morning. My name is Marshall Searcy. I'm appearing here for Equilon, the appellee in the case. I just want to respond to a couple of the things that Mr. Lebedev said. I think for the most part, he was very straightforward on the issues in the case, so I just want to touch on those briefly. First, he conceded early on, as they have throughout, that the same primary right is involved in both cases for Mr. Dole, and that is the primary right under the statutes that are in place in California to be free from discrimination on pricing of wholesale gasoline. You don't have to necessarily link that to the contractual relationship. He has no claim without the contract. Your Honor, actually, that's not necessarily true, and if you take a look at the complaint involved in the case, the complaints for locality discrimination, as well as the complaints for predatory pricing by Equilon, the claim being that Equilon sells its gasoline from its company-owned stations at a price that's lower than what its costs are. These are all claims that, in fact, don't have anything to do with the franchise contract, and are their own different primary rights. Locality discrimination depends on what the locality is, doesn't it? That's correct, Your Honor, but that really goes to the issue of what type of evidence would be involved. Well, but it also, I mean, the district court said we, I look at the complaint and I can't tell what the limits are, but obviously the whole force of the complaint depends on where the station is. If a district judge couldn't see that, he was blind. Well, Your Honor, if I may, with the appellant's complaint, there was a complaint brought by a series of dealers challenging the way that Equilon sets its prices throughout all of California. Now, the claim for discrimination, in order to prove that up, a plaintiff has to show what their relevant market is, but that's an issue of evidence, and certainly here where you have a series of plaintiffs who are coming in and saying that my marketing area is this, my marketing area is that, it's not the case where somehow Mr. Dole was impeded from presenting the evidence about his other stations. No, it was just dismissed. Well, it was dismissed, that's correct. He never got to that point. He never got to that point, which is why race judicata applies, but before he got to that point. Why should it apply when it was a case based on a particular locality? I don't think you've answered my question. I'm trying to, Your Honor. Okay. With regard to locality discrimination, he made a strategic choice at the beginning of his lawsuit that he would only bring a claim in Los Angeles with a series of other dealers based on this one station and concerning the locality around that one station. He could just as easily have brought a suit based on that second station. There was nothing impeding him from doing it. I understand that. It was a complete strategic choice. But I don't understand that race judicata applies on the face of it just because you could have brought the claim A along with claim B. If you go to trial, you may get client for estoppel, but you don't get it on the face. Well, certainly race judicata applies to claims that could have been brought. And in this instance, Your Honor, the appellant brought a lawsuit that challenged Equilon and Shell's pricing systems throughout. It wasn't based on – there was no geographic limitation on the face of the complaint, certainly, and there was nothing that prevented him from bringing his additional claim. Thus, when there is a judgment, race judicata applies. Counsel, I need some more concreteness to understand this. I agree with you that standard race judicata law is all claims that were brought or could have been brought. However, applying that in a particular case can be a little tricky. Certainly, if you have one injury, you have to bring all claims that were brought or could have been brought, whether it's negligence or products liability or strict liability or intentional tort or whatever it was. Or you may have to join as counts in the same claim contract, quasi-contract, fraud and various other things all arising out of the same negotiations and failures to satisfy each other. I'm having a little trouble, and I want you to guide me through this Hansen complaint. I'm thinking the theory is just the same. The wholesaler is defining the market wrong so that, in effect, his stations get to undercut our stations by buying gas cheaper. The evidence is going to vary. One case will have a lot of evidence, I don't know, about Riverside. Another case, a lot of evidence about Santa Barbara. I don't know Southern California really. It will be different localities. So in that sense, the evidence will vary. Take me through what you think are the critical parts of this Hansen case and show what paragraphs mean that these are claims that could have been brought in the Hansen case. Well, Your Honor, if I may just sort of guide you generally through it, and then certainly Mr. Lebedev can correct anything that he believes that I'm misstating. But what the plaintiffs have alleged in this case is that Shell has, or Equilon has, it goes by Shell Oil as a DBA, has a territorial pricing system. And that when Equilon sets up this territorial pricing system, based on its own internal computations, it sets prices in different competitive areas, different regions, that differ between those various areas. And so as a result, the appellant is alleging that there are times when his stations will pay more at a wholesale price for gasoline than competing stations. And that is the same allegation that's made by all the plaintiffs. In the same territory or within the same? The claim of the appellant is that that's within the same, what he would call, relevant market. Oh, I get it. And so Shell is saying, no, we're not. These are not competing markets. And the plaintiffs are saying, yes, they are. You don't realize that the market there and our market are overlapping. That's correct, Your Honor. I get it. That's correct. Do they claim that within the market, well, I don't know quite. Let's just assume for a minute, you know, he's got the station down in the South Bay, the Gardena station. Correct. Now, I don't know. He says that Shell identifies that as a separate marketing area, quote, unquote. And is the claim that within that area, between one Shell station and another Shell station, there's getting lower prices? Or is it between that market, Gardena, and the San Fernando Valley that there's different prices being charged? The allegation by the appellant is that when Shell sets up these pricing zones, that the zones are too small. And that, in fact, the various plaintiffs compete with stations that are outside of those pricing areas that are then paying lower wholesale prices. This is strictly the Section 21-200 claim, but it applies, the logic applies generally. That those stations outside of the Shell designated pricing zone are thus paying less, and that appellant claims that he actually competes with those stations that are outside of the zone. How could this be anything other than a how much question? I'm thinking I once had a question about a Shell truck stop in Portland. No, it was Union 76, I guess. And it turned out that if you have a nice truck stop and low prices, truckers will drive 300 extra miles to go to your truck stop instead of another one. On the other hand, if you don't have a lot to offer them, they won't. Likewise here, it seems like the size of the market would reflect the price. People drive across town or to another town if it's a good enough bargain, and they'll go for convenience if it isn't. I don't understand how you can make out much of a, how you can fit it into the statute. Well, without getting into the details of it, Your Honor, because it really does, as Mr. Levidoff says, go to the merits of the case, there was an analysis that was conducted and is conducted periodically by Equilon and Shell to determine what these competitive areas are and to determine what the price sensitivity is between each area. Now, the appellant and the other plaintiffs in these various cases have challenged sort of the veracity or rather the integrity of that study and have put forth their own experts who say that, in fact, if you look at it, that all of the stations basically within, say, Los Angeles compete with each other. Or all of the stations, they've had an expert who said all of the stations within San Francisco compete with each other. So, it is really a question of determining what competitive areas are and determining sort of the integrity of those competitive areas and the sensitivity. So, when you get into the details of it, the question is sort of what is Shell's pricing system? Is it appropriate or not? And that's the same claim in every case. And that's why because Mr. Dole has lost his first case, he doesn't get to challenge that same pricing system again because that's what this all comes down to. To what extent is the case going to be about theory? For example, an economist will say a person lives in Riverside and works somewhere in the L.A. area. He decides whether to fill up at the home end or the work end depending on the prices. And to what extent is it going to be expert evidence about geography and where do Riverside people drive to and how many of the customers' license plates in the Riverside gas station show a Riverside registration address, that sort of thing? In the cases that are going forward now, Your Honor, there was a reference to a case that's going to trial in May. I think we're going to get expert evidence on all those types of issues in terms of what do consumers do, generally speaking, with regard to price? How far will they drive if a price is lower? How far will they avoid a station if a price is higher? These are all items that will be part of the trial that's coming up in a separate action that doesn't involve Mr. Dole, but that are implicated by the plaintiff's challenges against Shell's pricing system. You would agree, wouldn't you, though, that under these franchise agreements, there's a unique relationship with each agreement? I wouldn't necessarily agree, Your Honor, that there is a unique relationship with each agreement. I mean, you could cancel the Valley, let's say, franchise agreement for failure to do X, Y, and Z, but he would still have his Gardena. That's correct. There really is a uniqueness there between each one. If Equilon were to breach somehow the franchise agreement with Mr. Dole regarding one of his stations, that would certainly create a cause of action, which would certainly be different than the cause of action that we're talking about now. But the primary right that's involved here, as Mr. Lebedev has conceded. His point, though, is that there's this contractual relationship which sort of drives the price discrimination claim. For me, it's bundled together to some extent. I'm sorry. No, that's okay. Now, did you have any case that really clearly established this would be treated as the same primary right by the Supreme Court of California? Well, Your Honor, this is a fairly novel issue. Do you think we should send it to the Supreme Court of California? That might be a proper approach. However, I think that the general principles of res judicata. Well, the principles are, I'd say, fairly clear. It's trying to sort them out in this rather complex situation. Correct. And there are very few cases that concern Section 21-200 under California's case law. So it always makes these types of cases a challenge in sort of sorting these things out. However, I think with the general principles of res judicata and the fact that the appellant here has, in fact, challenged sort of the legality of Equilon's pricing system, he doesn't get to do it again by then having to make that strategic choice to hold back. The principles aren't in controversy. It's what the primary right is that's sort of in controversy. And is it a primary right that arises only in terms of particular contracts or not? That's the problem. And I think that if you were to look at the statute itself, it talks about discriminatory pricing between competitors. The statute itself doesn't specifically describe franchisees. But beyond that, looking at the actual franchise agreements themselves, the agreements aren't where this all comes from. There's no allegation of a breach of the agreement anywhere. There's a good faith obligation implied in every contract. Certainly. Which is each party has a good faith obligation to make sure that each side reaps the benefits of their contract. And if you're charging lower prices to somebody else, frustrating their ability to really gain from their franchise agreement, it looks like you're violating their primary right to me. Well, if I may, Your Honor, if you were to look at the franchise agreements themselves, there is a provision that provides for setting gasoline prices in good faith. And so, in fact, many of the plaintiffs in these types of cases will bring a claim for breach of that. However, there's no claim for any sort of breach of that here. And in any event. It's like the good faith obligation here. At least they're saying it should be measured by the statutory right that's at stake as well. Well, you have to read it all together. Well, Your Honor, with regard to whether a primary right has been created by the contract, if you were to look at, and I'm sure you have, the cases that have been cited by appellants. There's not very many. Those cases all concern breaches of the contracts. And there's no allegation here. No, I realize that. I realize that. There was a breach of contract allegation in the Hansen case. Correct. But not in this case. I saw that. Thank you, Your Honor. Thank you, counsel. We ran through your time, but go ahead and take 30 seconds or a minute. First of all, just as an aside, the original case that was in federal court was dismissed under the federal standard, not under the state standard. And it was only until the opposition in this case that appellant is arguing the California standard, which I now believe is the correct standard. But procedurally speaking, it was originally dismissed under the federal standard. And I addressed that in my opening brief as well, I think. Now, with regard to what counsel said, we never alleged, and the plaintiffs in this case never alleged or aren't trying to allege, that Equilon's zone pricing system in and of itself is discriminatory or somehow wrong. What we're alleging is that they can price the gas however they want to price. We're not telling them what kind of system they should have. But the result of what they're doing is charging different prices to competitors in the same market. So we're looking at the result of what they did. Now, obviously, Equilon is going to come in and say, well, we have this system, and it's a perfectly valid system, and therefore, because we have this system, the results we have must be valid. And, of course, there are issues regarding that, what they did and how they did it. But ultimately, if the result of what they did doesn't result in stations who compete with each other being charged different prices, then it doesn't matter what their system is. And so when counsel says that we're challenging Equilon's way of doing business, and this is why that's the primary right, I disagree with that. I think the primary right is our right to be charged the same prices as our competitors are being charged. And that right arises out of our franchise relationship. And the court was correct in suggesting that if one contractual relationship is canceled for whatever reason, the other contractual relationship remains in force. And at the same time, when that first contractual relationship is canceled, so is the right to sue under this statute, because at that point, there's no longer any purchase and sale of a product between the franchisor and the franchisee. When you deal with race judicata, there are practical concerns. And I guess the concern here is privity of ownership, a bunch of gas stations, scatter cases in a bunch of jurisdictions. When you find a good judge or jurisdiction where it looks like you might get a good jury, drop the other ones, proceed with the one that's good, get a result, and then use it as collateral estoppel on the others, or maybe even turn it into a class action or multi-plaintiff action. And race judicata is supposed to get you stuck with the first time you try it. I'm not sure. I mean, again, what we have here are different plaintiffs with different franchise agreement, different locations, different stations. So I'm not sure that collateral estoppel would necessarily apply to all regions. So if we're dealing with Los Angeles, and then there's a separate issue in San Francisco. What about one guy who owns a dozen gas stations in Los Angeles, though? Am I mistaken in thinking this is that sort of case? Not necessarily, because Mr. Diol, although it's in Los Angeles, there are different regions of Los Angeles. There's a difference between Gardena and San Fernando Valley. Sure. Beats me. But the thing that Epelon keeps saying is, well, even if we just lose in the San Fernando Valley, this is going to create a domino effect that's going to affect a wider area because we're going to have to reassess how we did that one area, and it's just going to spill over into other areas. But it is all Diol's group of gas stations in the Los Angeles area? The general metropolitan Southern California area, I would say. And he only has, I think, three stations, but there's only two stations involved in this case. But I think we have to boil it down to the lowest common denominator here. We can talk about these bigger issues, but ultimately it comes down to, what is the right that we are saying is subject to res judicata? And the right that Mr. Diol had is the right that arose out of his franchise relationship at one location, and the other case deals with his relationship in another location. So under California law, I think it's pretty clear that if you have different contractual rights, those are different primary rights because they arise on different agreements. So if we weren't talking about franchise agreements here, if we were talking about a franchise agreement in one station for price discrimination, and let's say another case also arising, a different franchise agreement, let's say for failure to maintain the station, for failure to maybe fix the pumps or something. You're talking about two different franchise agreements, two different primary rights, and I don't think anybody would argue that Mr. Diol wouldn't have the right to bring a claim for maintenance separately than a claim for price discrimination. But if you had a claim for maintenance and a claim for price discrimination arising out of the same location, out of the same franchise agreement, then I think the argument would be, well, that arises under the same contract, and you should have brought them together. So this is my point, is that because they arise in their different contractual relationships, different duties and different rights arise. Even though those rights may be similar, they arise under a different set of contracts. Got it. Thank you, Counsel. Thank you, Ryan. Diol v. Equilon is submitted. We'll hear Rome v. Smith-Klein.
judges: Noonan, Kleinfeld, Paez